Furniture v. Frankel. Mr. Bloss, glad to hear from you. Thank you, your honor. May it please the court, my name is John Bloss. I am here for defendant Paul Frankel. The district court in granting summary judgment necessarily decided two things. One, that offensive collateral estoppel applied with respect to the Colezioni litigation and that as a result Paul Frankel was deemed to have been involved in copyright infringement and two, the court ruled that he was liable himself, personally liable. In order to rule on the offensive collateral estoppel issue, the court ruled that the Colezioni litigation bound Paul Frankel in this litigation and I need to go back and go through what Universal did here. First, Universal made the choice to sue Colezioni only in the first litigation despite the fact that there was strict liability as to the individual defendants with respect to the copyright claim. How are you prejudiced because your client is the Vice President, Chief Operating Officer, Secretary Treasurer and part owner of that company. He was there during the proceedings, he was available to witness. The plaintiff can pick and choose the defendants they want. They didn't have to pick him, did they? I do believe that if they wanted to have offensive collateral apply, offensive collateral estoppel apply, they either had to sue him in the first litigation or have a good reason for not suing him. And that comes under this court's including the Microsoft opinion. And so despite the fact that there is a strict liability issue involved here against the individual defendants, Universal decided not to sue them in the first lawsuit. It proceeded with discovery, took the depositions of both defendants, did not amend the case at that time to add the individual defendants, tried the case and it was only after getting a favorable ruling on liability that it filed a new action asserting identical claims against the individual defendants. The defendant submits that the plaintiff's offensive collateral estoppel argument should get no further than the first factor in the offensive collateral estoppel analysis, which is whether the plaintiff could have easily joined in the action against the defendant in the earlier action. The cases that have dealt with this in this circuit to this point involved a situation where a second plaintiff could have come in, either been represented in a class action or could have intervened or otherwise been involved in the first action, sits back, lets the first action proceed and then after the plaintiff in the first action gets a favorable result comes in and tries to assert offensive collateral estoppel. But my point is, wasn't your client in privity with his company? No, Your Honor. He was not in privity. Under this circuit's opinion in Martin, it strictly applies the privity analysis. The plaintiff here has argued only one of those factors, which is that Mr. Frankel, it argues, controlled the litigation. That's the test in Martin. Doesn't he only need one? Yes. And he was in fact in control of the litigation. He was an officer of the company. He was a 49 percent shareholder. He was the 36th witness throughout the sole representative at trial. How is it that he was not in control? He was a 36th witness on the issue of the company's finances. That's what he did in the company, was finances. His affidavit and other summary judgment argument, other summary judgment evidence, which is undisputed, states that he, first of all, with respect to the depositions, he was compelled to the depositions, and that Leonard Frankel gave him the instruction to sit in the courtroom throughout the trial. And that's why he was there. Paul Frankel, by affidavit, says he didn't choose counsel. He didn't choose replacement counsel. He wasn't involved in the correspondence with counsel or the strategic decisions in the case. And the district court acknowledges . . . Didn't your client testify that the threat of litigation or the presence of litigation is something that we would not just let happen? My brother and I are co-owners of the business. I own an equal amount to my brother, and this is not something that we both didn't discuss. That is, the litigation. Yes, that is correct. And again, they certainly discussed the litigation. He certainly was involved throughout the litigation as a witness. But his affidavits make clear that he didn't control the litigation and that he didn't make decisions on how the litigation proceeded, didn't choose counsel, et cetera. Well, wasn't he aware of the infringement and in fact complicit in it? Um . . . No, and again, his . . . How do you . . . Why do you say that? He . . . There's correspondence out there, back and forth, about the infringement. He certainly saw that correspondence. He did see the correspondence. What did he do about it? A letter came in from Universal that said you were using our furniture at the High Point Market, after the High Point Market. It was addressed to Leonard Frankel. Paul Frankel saw the letter, discussed with his brother that they needed to pull the furniture and redesign it. Um . . . He didn't . . . Paul Frankel's duties in the company were financial in nature, not on the side of deciding what furniture to produce and being involved in how the furniture was manufactured, et cetera. So in essence, your argument is I'm not my brother's keeper then? Correct. The fact that they're brothers makes the case . . . I mean . . . Just because they're brothers doesn't mean that they're together on all this. You know, they are brothers, but they . . . For purposes of the case, they are officers of the company that have individual duties, and Paul Frankel's duties as he avers were restricted to the financial side of the company. Um . . . Well, he certainly had a very big stake in the issue below, and he had a big role in the litigation. He could have offered anything that he wanted to. In his own defense, he was ready and willing to present himself in that first case. And I think application of collateral estoppel may well be appropriate in this case. His involvement was so extensive. And again, um . . . I don't think that the case should get past the first step, which is that the plaintiff has never given any reason that it didn't join the individual defendants in the first case. The district court acknowledges that there was no reason that they couldn't have been joined. The Fourth Circuit jurisprudence in this area says that, um . . . For example, the Microsoft case says that the court has discretion, and it cites the Park Lane case, Supreme Court case, for the proposition that the court has discretion in determining whether to apply offensive collateral estoppel. Microsoft case then says, but this discretion should not be exercised to permit the use of offensive collateral estoppel where a plaintiff could have easily joined in the earlier action, or where the application of offensive collateral estoppel would be unfair to a defendant. And again, the analysis shouldn't get past that point. But to the extent that you do go to the other factors, um . . . the, under this court's Martin opinion, there is no privity. And again, that's because Paul Frankel didn't control the litigation. The district court, in fact, appeared to acknowledge that there was at least a material issue of fact as to whether Paul Frankel controlled the litigation. But it said, um . . . in the search that he did not have control over the defense, the court finds that there's no evidence to suggest that he would have conducted himself any differently during the liability phase had he been a named defendant. Um . . . And what's untrue about that finding? There is nothing untrue about the fact that there was no evidence before the court that he would have conducted himself any differently. I would submit that that doesn't . . . the fact that he . . . there's no evidence that he would have conducted himself any differently in the litigation is a far cry from having control over the lawyer involved, the strategic decisions, et cetera. I think it's important to note that Colezioni was a failing business. It was in the furniture industry as the economy was collapsing. And Universal tried the case using an expert, a very well-known expert. On the other hand, Colezioni tried the case with only its financial officer there. And in the transcript, many times the court or the opposing counsel asked him questions that he can't answer. It's clear that he was not . . . that Colezioni was not defending the case nearly as rigorously as Universal was prosecuting it. And in fact, the court notes that . . . in the district court opinion, it notes that it could have been readily apparent to the defendant that the corporate veil stood between him and personal liability for damages. So Paul Frankel did not have the same incentives in defending a failing corporation that filed for bankruptcy shortly afterwards. Well, can you point to anything specific that Frankel would have said or done differently in the first trial if he thought it was going to be preclusive of him? There is nothing in the record to that effect, Your Honor. But again, Universal put forward an expert, a well-known expert, Colezioni, defended without an expert and with only its financial officer in the courtroom. And the court . . . the defendant did not have the same incentive as the court notes. When the court talks about the damages part of the case, the court says the defendant did not have the same incentive to minimize the damages calculation  had been directly at stake. I think that also applies to the liability phase. He didn't have the same incentives and he didn't choose . . . counsel didn't choose the litigation strategy according to his affidavit. And so there's at least a material effect as to whether he did control the litigation. Thank you. You have some time to reply. Mr. Wood? Good morning, Presiding Judge Floyd, Justice O'Connor, Judge Thacker. May it please the court, I'm Swain Wood from Raleigh and the Wood Jackson Firm. It's an honor to be here this morning on behalf of the Your Honors, in Mr. Bloss' discussion, much of his argument seemed to come back to the notion that the precedence of this circuit creates somehow a per se rule that would override the discretionary analysis that's set forth in the Park Lane Hosiery decision about when offensive collateral estoppel should apply. The Park Lane Hosiery decision is very clear that it's . . . Well, the question is whether you can hold a corporate officer personally liable because the company engaged in copyright infringement. Now, how far down can you hold corporate officers personally liable? I mean, what would be left of the corporate system, if you're right? Well, it's well established in copyright cases that a corporate officer or someone else who actively participates themselves in the infringement or who supervises it with a direct financial interest in it can be held personally liable. So the vicarious liability standards are well established in this circuit. And elsewhere, for example, in the Nelson-Salabas decision from this circuit, I believe makes that clear, here there was no dispute, nor could there be any dispute, that Mr. Frankel personally participated in the infringing activity. Much of his argument on appeal against that is centered on the notion that he didn't participate in designing the furniture. We don't argue that he did. What we argue and what the record establishes in uncontroverted fashion is that he personally participated in the distribution of the furniture. Now, he wasn't driving the delivery truck and moving it into furniture stores, but he was the executive, one of whose primary responsibilities was to manage that distribution process. The term that he used for it... And you say at that point in time he knew that that furniture infringed the copyright or whatever action Universal had. Certainly after October of 2004 when the correspondence was sent and the complaint was filed, and by his own testimony, he was involved in responding to that and in making the decision to replace what had been just an exact duplicate of the plaintiff's furniture with a new redesigned line, he unquestionably and by his own testimony was involved in making that decision and then in communicating with customers who had placed orders based on having seen the first version. He's sort of putting those on hold and telling them that there is this new redesigned version that's coming that they should allow to fill their order, in effect harvesting those sales that were obtained through the false advertisement or the display of our furniture. And that was all after October 2004 when your client sent the letter, is that correct? That's correct. What evidence is there in the record that he participated in those design decisions prior to October 2004? There is no evidence in the record that he participated in design decisions prior to October 2004. Now, I'll note that that's when the sales started. That's when the infringing sales started. His testimony is that at all times when he was employed by Coliseum, his duties were essentially the same and they included among other things managing the order fulfillment process. So there is evidence in the record that that happened before October 2004 and continued at all relevant times after that. Now, one of the key points is that that redesigned furniture itself was found to be substantially similar and infringing by the District Court. And I think when we're focusing on the collateral estoppel argument here, it's important to keep in mind what issues it is that the District Court precluded Mr. Frankel from relitigating. It wasn't all issues. It wasn't issues as to whether he personally was liable. It was issues as to whether the copyright was valid, whether substantial similarity existed, and whether the furniture that Coliseum displayed in its showroom in October of 2004 was in fact another company's furniture, presented as if it were its own. Those are the issues that he was precluded from relitigating. There's absolutely no suggestion in the record that he would have tried any of those issues any differently. There's no evidence to substantiate that. There's no evidence to substantiate the argument that as of the time the Coliseum litigation was happening, that Coliseum was a failing company. In fact, two of the most important pieces of evidence we would submit in the record here are Mr. Frankel's own declaration testimony, one in June 2005, in opposition to our motion for a preliminary injunction, the other in October of 2007, in opposition to the motion for permanent injunction that was made by the plaintiff after the ruling on liability had been issued by the court. Tell us what facts that you believe support the finding that he was complicit in the infringement. The facts that support the finding that he was complicit in the infringement, many of them are evident from his trial testimony in the case where he acknowledges that he participated in the decision to redesign and then to effectively put the original orders on hold and then fill them with the, sort of hold off the customers for long enough so that the new redesigned furniture can be used to fill their order. That's one source of the evidence. And then the other evidence that he was complicit in the infringement is understanding what the infringement is. The infringement is not just the redesign. That's a separate act of infringement giving rise to liability under Section 106 of the Copyright Act, the acts of distribution of the infringing furniture, regardless of whether he knew that it was infringing at the time, although we argue the record is clear that he did. But the record is absolutely clear that he participated in that activity. He managed that activity. He supervised that activity. And from October of 2004, he knew that Universal believed that that activity, with respect to those two furniture collections, was infringing on its copyright and that the initial sales had been obtained as a result of the display of Universal's furniture. Again, for all the reasons that the Court has pointed out, Mr. Frankel's participation in the Coliseum litigation was extensive. There's no suggestion that he would have done anything differently. The testimony, his testimony in October of 2007, which is in the Joint Appendix, his testimony is on the issue of irreparable harm. And I think that powerfully demonstrates just how much of an incentive he had to litigate during the Coliseum litigation. He's saying in October of 2007, after the liability ruling had come out in September, that if we're required to shut down, this is really going to be harmful to our business. Now, there's no indication in the record that up until the Court did shut it down by granting that motion for permanent injunction that there was any harm to the business and that the notion that Coliseum was a struggling company in May when the case was tried or in the two years before that as the case was being litigated is not supported by the record. In fact, it was litigated extensively, as the record before the Court makes clear. It was appealed to this Court. The liability and damages rulings were appealed to this Court by Coliseum even after they had filed bankruptcy during the pendency of this case and were affirmed in all respects on appeal. So, Your Honors, we believe that the record is very clear that there is no genuine issue of material fact as to either the application of collateral estoppel in this case or as to the facts that give rise to Mr. Frankel's personal liability. So we would ask that the Court affirm the judgment of the District Court in all respects. Unless there are further questions at this time from the Court, I yield the balance of my time. Any questions? Thank you. Thank you very much. The District Court gave two reasons for its decision to apply collateral estoppel offensively at page 13 of its opinion. First, it said that the Court finds, and it uses the word finds throughout the summary judgment opinion, the Court finds defendants' strong incentive to aid in the defense of the Colezioni litigation to be the most significant consideration. And then the Court, the other basis is that the Court finds that a general concern for conserving judicial resources counsels strongly in favor of applying collateral estoppel. And certainly in this case, to the extent that offensive collateral estoppel does not apply, all of the issues that were tried relating to the copyright infringement, whether the aesthetic portions of the furniture infringed on Universal's design would have to be retried. But this case is not the only case that this Court's opinion would give precedent on. And to the extent that it affirms that there's going to be an incentive for litigants to file suit against a company, not the individuals, wait and see if it wins, and then go back and say, we already won on the liability phase, now we went against you, and you have the burden of showing what you would have done differently in the litigation. That's not, I would submit, what this Court's precedent requires. First of all, if there's no reason for not joining the defendants, the analysis should end there. And in fact, at page 2 of our reply brief in the footnote, I cite authority for the proposition that the second case should be precluded altogether under res judicata, that the first lawsuit is the one suit you get, at least as to litigants that are in privity. And to the extent that the plaintiff prevails on its argument about privity, those res judicata cases would apply so that the second case shouldn't even go forward at all. But certainly the plaintiff should not be rewarded here for deciding to engage in piecemeal litigation. And to the extent that this Court affirms that's going to be an incentive for litigants in the future. Unless the Court has any further questions. Thank you, sir. Thank you very much. Thank you. We will come down in Greek Council and proceed to the next case.
judges: Sandra Day O'Connor, Henry F. Floyd, Stephanie D. Thacker